**Orin O. OSBORN, on his behalf and on behalf of all others similarly situated, Plaintiffs-Appellants,**

v.

**AMERICAN ASSOCIATION OF RETIRED PERSONS, an association incorporated under the laws of the District of Columbia, and National Retired Teachers Association, an association incorporated under the laws of the State of California, and the United States Department of Labor, an Executive agency of the United States, Defendants-Appellees.**

**No. 78–3744.**

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 9, 1980.

Decided Nov. 6, 1981.

David S. Admire, Arnold T. Barer, Weckworth, Barer & Meyer, Seattle, Wash., for plaintiffs-appellants.

Bart Waldman, Seattle, Wash., Carin Ann Clauss, Charles G. Preston, Washington, D. C., for defendants-appellees.

Before TRASK and GOODWIN, Circuit Judges, and WATERS,* District Judge.

* Honorable Laughlin E. Waters, United States District Judge for the Central District of California, sitting by designation.

TRASK, Circuit Judge:

Appellants, individuals employed pursuant to a federal aid program established by statute, appeal from dismissal of their class action against the Department of Labor (DOL), the American Association of Retired Persons and the National Retired Teachers Association (collectively AARP) pursuant to Fed.R.Civ.P. 12(b)(6). Appellants contend that a private right of action is implied by the statutory wage provision that governs their rates of pay. This is an issue of first impression in the Court of Appeals. Appellants also argue that they have standing to sue as the intended beneficiaries of contracts entered into pursuant to the provision, that exhaustion of administrative remedies is not a jurisdictional prerequisite to suit, and that DOL and AARP have misinterpreted and misapplied the provision. We affirm.

I

The statute here at issue is the Older American Community Service Employment Act of 1973 (the Act), 42 U.S.C. §§ 3056–56f, enacted as part of the Older Americans Amendments of 1975, Pub.L. 94–135, 89 Stat. 713 (the Amendments). The Act provides federal funds for the creation and subsidization of part-time, community-service jobs for low-income Americans over age fifty-four. It is administered by DOL through contracts between DOL and individual nonprofit sponsor organizations such as AARP. Under such a contract, the sponsor agrees to arrange for the creation of one or more wholly subsidized jobs in a governmental or nonprofit community-service "host" agency. These jobs are then filled by persons qualifying for assistance under the Act (enrollees). The sponsor supervises the enrollees until they are placed in nonsubsidized employment. Wages for these jobs are funded ninety percent by federal monies administered through DOL and ten percent by funds donated by the sponsor.

The Act provides that persons employed under its provisions shall be paid the highest of the federal minimum wage, the applicable state or local minimum wage, or the prevailing wage of persons employed in similar public occupations by the same employer. 42 U.S.C. § 3056(b)(1)(J). Appellants were all employed pursuant to the Act and claimed that they were not paid the wage prescribed by section 3056. After one appellant had unsuccessfully exhausted available administrative remedies, all of the appellants filed suit in the district court. The district court dismissed the action, holding that appellants failed to state a valid claim because no private right of action exists for enforcement of section 3056. It also held that appellants lacked standing to sue as beneficiaries of the contract between AARP and DOL. Alternatively, assuming that appellants had stated a valid claim, the court ruled that DOL and AARP were entitled to judgement as a matter of law, either because all appellants had not exhausted administrative remedies, or because DOL's interpretation and administration of the wage provision was not erroneous. Appeal is taken from this decision.

II

Judicial implication of a private right of action under a statute which does not expressly create one is a matter of statutory construction. *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 15, 100 S.Ct. 242, 244, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979). Although it was once thought that appellate review in an implication case properly encompassed the question whether a private action was desirable as a matter of policy, *see, e. g., J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), the Supreme Court has recently emphasized that the attention of the reviewing court in such cases should be wholly centered on congressional intent. *E. g., Universities Research Association v. Coutu*, 450 U.S. 754, 767, 101 S.Ct. 1451, 1460, 67 L.Ed.2d 662 (1981); *TAMA v. Lewis, supra*, at 15–

16, 100 S.Ct. at 244–245. *See also CETA Workers' Organizing Committee v. City of New York*, 617 F.2d 926, 932 (2d Cir. 1980). In other words, the sole factor to be considered in deciding whether a private right of action should be implied under a statute is whether Congress intended that the statute's provisions be enforced through private litigation. *See TAMA v. Lewis, supra*, 444 U.S. at 18, 24, 100 S.Ct. at 246, 249; *Touche Ross & Co. v. Redington, supra*, 442 U.S. at 568, 99 S.Ct. at 2485 (citing *Cannon v. University of Chicago, supra*, 441 U.S. at 688, 99 S.Ct. at 1953). Factors relevant to evaluation of congressional intent are "the language of the statute itself, its legislative history, the underlying purpose and structure of the statutory scheme, and the likelihood that Congress intended to supersede or to supplement existing State remedies." *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 91, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 (1981); *see Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975).

### A

We begin with the language of the statute. *Northwest Airlines, Inc. v. Transport Workers Union, supra*, 451 U.S. at 89, 101 S.Ct. at 1579; *Touche Ross & Co. v. Redington, supra*, 442 U.S. at 568, 99 S.Ct. at 2485; *Cannon v. University of Chicago, supra*, 441 U.S. at 689, 99 S.Ct. at 1953. Section 3056 reads in relevant part:

In order to carry out the provisions of this subchapter, the Secretary [of Labor] is authorized to enter into agreements with public or private nonprofit agencies

or organizations . . . to further the purposes and goals of the program . . . . No payment shall be made by the Secretary toward the cost of any project established or administered by any such organization or agency unless he determines that such project—

. . . . . .

(J) will assure that . . . persons employed in community service jobs assisted under this subchapter shall be paid wages which shall not be lower than whichever is the highest of (i) the [federal] minimum wage . . ., (ii) the State or local minimum wage . . ., or (iii) the prevailing rates of pay for persons employed in similar public occupations by the same employer . . . .

42 U.S.C. § 3056(b)(1).

It is obvious that individuals employed pursuant to the Act, such as appellees, were intended by Congress to benefit from enactment of section 3056. To permit implication of a private right of action, however, the language of the statute in question must do more than confer benefits, for "[t]he question is not simply who would benefit . . ., but whether Congress intended to confer federal rights upon these beneficiaries." *California v. Sierra Club*, 451 U.S. 287, 294, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981) (citing *Cannon v. University of Chicago, supra*, 441 U.S. at 690 n.13, 99 S.Ct. at 1954 n.13[1]); *accord Universities Research Association v. Coutu, supra*, 450 U.S. at 767–771, 101 S.Ct. at 1460–61 (statutory language provided no support for private right of action because "it does not confer rights directly on [the benefitting]

---

1. Footnote 13 reads in relevant part:

[T]he right- or duty-creating language has generally been the most accurate indicator of the propriety of implication of a cause of action. [T]his Court has never refused to imply a cause of action where the language of the statute explicitly conferred a right directly on a class of persons that included the plaintiff in the case.

. . . . .

Conversely, the Court has been especially reluctant to imply causes of action under statutes that create duties on the part of persons for the benefit of the public at large.

By itself, this language could be read as impliedly leaving open the possibility that the language of a statute might properly evidence congressional intent to create a private right of action even though such language does not expressly confer a federal right on the benefitting class. However, we understand the more recent Supreme Court cases cited above in text—*i. e., Sierra Club, Universities Research, TAMA*, and *Touche Ross*—as having made clear that express conference of federal rights by the statutory language is necessary, rather than merely sufficient, for a court to find that Congress intended to create a private right of action when it enacted the statute.

class"); *Cort v. Ash, supra,* 422 U.S. at 78, 95 S.Ct. at 2087–2088 ("[I]s the plaintiff 'one of the class for whose *especial* benefit the statute was enacted'—that is, does the statute create a federal right in favor of the plaintiff?") (emphasis in original and footnote omitted) (quoting *Texas & Pacific Railway v. Rigsby,* 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916)).[2] Thus, the Court has held that where the statutory language does not by its terms proscribe specified conduct or create or alter civil rights or liabilities, such language cannot support implication of a private right of action. *TAMA v. Lewis, supra,* 444 U.S. at 18–19, 100 S.Ct. at 246–47; *Touche Ross & Co. v. Redington, supra,* 442 U.S. at 569, 99 S.Ct. 2485.

The language of section 3056 neither proscribes conduct nor affects civil rights or liabilities. On its face, the language does not prohibit sponsors from paying less than the statutory wage. Neither does it expressly confer upon enrollees any rights exercisable against sponsors. Section 3056 is only a directive to the Secretary of Labor to withhold federal funds from sponsors who do not pay enrollees the statutory wage. Thus, any benefits inuring to enrollees under section 3056 are not conferred on them directly by the language of the statute, but incidentally by the Secretary's performing his statutory duty.[3]

In *Universities Research Associates v. Coutu, supra,* the Supreme Court held that a private right of action is not implied by section One of the Davis-Bacon Act, which requires that certain wage provisions be written into federal construction contracts. In support of its holding, the Court rea-

**2.** *See also Texas Inds., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981):

> [I]t is equally clear that the Sherman Act and the provision for treble-damage actions under the Clayton Act were not adopted for the benefit of the participants in a conspiracy to restrain trade. On the contrary, petitioner "is a member of the class whose activities Congress intended to regulate for the protection and benefit *of an entirely distinct class.*" *Id.* at 639, 101 S.Ct. at 2066 (emphasis in original) (quoting *Piper v. Chris-Craft Inds., Inc.,* 430 U.S. 1, 37, 97 S.Ct. 926, 947, 51 L.Ed.2d 124 (1977)).

**3.** Recent Supreme Court cases suggest that the language of statutory spending directives is usually not sufficiently focused on the benefitting class to be properly construed as conferring rights on the class. For example, in *Cannon v. University of Chicago, supra,* the Court held that a private right of action is implied by section 901(a) of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a). 441 U.S. at 717, 99 S.Ct. at 1968. In reaching an intermediate conclusion that the language of section 901(a) confers federal rights upon private parties, the Court stated:

> There would be far less reason to infer a private remedy in favor of individual persons if Congress, instead of drafting Title IX with an unmistakable focus on the benefitted class, had written it simply as a ban on discriminatory conduct by recipients of federal funds or as a prohibition against the disbursement of public funds to educational institutions engaged in discriminatory practices.

441 U.S. at 690–93, 99 S.Ct. at 1954–1955 (dictum). As an example of such a conditional spending ban or prohibition, the Court cites the language of an earlier anti-discrimination proposal which was rejected by Congress:

> The Secretary [of HEW] shall not make any grant, loan guarantee, or interest subsidy payment, nor shall the Secretary enter into any contract with any institution of higher education, or any other postsecondary institution, center, training center, or agencies representing such institutions unless the application, contract, or other financial assistance contains assurances satisfactory to the Secretary that any such institution, center, or agency will not discriminate on the basis of sex in the admission of individuals to any program to which the application, contract, or other arrangement is applicable.

*Id.* at 693 n.14, 99 S.Ct. at 1955 n.14. Similarly, the Court has also recently held that the provision of the Developmentally Disabled Assistance and Bill of Rights Act that details conditions to be satisfied by states receiving funds under the Act does not create substantive rights in favor of persons eligible for assistance under the Act. *Pennhurst State School & Hosp. v. Halderman,* 451 U.S. 1, 18–29, 101 S.Ct. 1531, 1540–1545, 67 L.Ed.2d 694 (1981). *See also Glynn v. Capaletti Bros.,* 621 F.2d 1309, 1314 (5th Cir. 1980), *quoted with approval in Universities Research Assoc. v. Coutu, supra,* 450 U.S. at 772 n.23, 101 S.Ct. at 1462 n.23; *Rogers v. Frito-Lay, Inc.,* 611 F.2d 1074, 1079 (5th Cir.), *cert. denied,* 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980).

soned that because the section "is simply 'phrased as a directive to federal agencies engaged in the disbursement of public funds,' its language provides no support for the implication of a private remedy." 450 U.S. at 772–773, 101 S.Ct. at 1462 (citation and footnotes omitted) (quoting *Cannon v. University of Chicago, supra,* 441 U.S. at 693 n.14, 99 S.Ct. at 1955). *See also Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (U.S. Apr. 20, 1981) ("the typical remedy for State noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State") (dictum). Because section 3056 is also only a spending directive, we likewise conclude that its language provides no support for implication of a private right of action in favor of appellants.

### B

The legislative history of section 3056 does not speak to the question whether Congress intended that a private right of action be available under this statute. *See generally* S.Rep. No. 94–255, 94th Cong. 1st Sess. 29–32, *reprinted in* [1975] U.S.Code Cong. & Ad.News 1252, 1269–72; H.Conf. Rep. No. 94–670, 94th Cong. 1st Sess. 29–30, *reprinted in* [1975] U.S.Code Cong. & Ad. News 1296–97. Although congressional silence is not necessarily fatal to implication of a private right of action, *TAMA v. Lew-*

*is, supra,* 444 U.S. at 18, 100 S.Ct. at 246; *see Cannon v. University of Chicago, supra,* 441 U.S. at 694, 99 S.Ct. at 1956, "implying a private right of action on the basis of congressional silence is a hazardous enterprise at best," *Touche Ross & Co. v. Redington, supra,* 442 U.S. at 571, 99 S.Ct. at 2487. Thus, a private right of action should be implied in the face of a silent legislative record only when there exists other significant evidence—based on, *e. g.,* the language of the statute, its overall structure, or the circumstances of its passage—that Congress intended to create such an action.[4] *TAMA v. Lewis, supra,* 444 U.S. at 18, 100 S.Ct. at 246; *Cannon v. University of Chicago, supra,* 441 U.S. at 694, 99 S.Ct. at 1956. However, when, as here, the language of the statute in question does not itself provide evidence favoring implication, a silent legislative history obviates the need to inquire further into congressional intent. *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981); *California v. Sierra Club, supra,* 451 U.S. at 293, 101 S.Ct. at 1779; *Touche Ross & Co. v. Redington, supra,* 442 U.S. at 571, 99 S.Ct. at 2487. In such cases, "[t]he question whether Congress . . . intended to create a private right of action, has been definitely answered in the negative." *Id.* at 576, 99 S.Ct. at 2489. *See also id.* at 580, 99 S.Ct. at 2491 (Brennan, J., concurring); *Universities Research Association v. Coutu, supra,* 450 U.S. at 767, 101 S.Ct. at 1460. Accordingly, we

---

4. In this regard, appellants urge consideration of 42 U.S.C. § 3034(c), a statutory provision which is not part of the Act, but which was passed as part of the Amendments. This provision authorizes the Secretary of Labor to fund low cost legal assistance to the elderly. It also provides that such legal aid may be used to "monitor the administration of any program by any public or private nonprofit . . . organization . . . designed to provide assistance to the elderly." 42 U.S.C. § 3034(c)(1)(B).

Section 3034 provides little support for appellants' position. The legislative report on the provision emphasized that the need for such aid stemmed from the general financial vulnerability of the elderly and the confusing eligibility requirements of federal aid programs. *See* S.Rep., *supra,* at 24–25, *reprinted in* [1975] U.S. Code Cong. & Ad.News at 1265. Thus, although congressional enactment of section 3034(c) is consistent with intent to create a private action under 3056, the legislative history suggests that the purpose of this provision was merely to provide the elderly with aid in dealing with the complex administrative requirements and procedures that exist under federal aid programs. Indeed, were we to find congressional intent to create a private right of action under section 3056 based on the mere existence of section 3034(c), we would impliedly find such intent with respect to every program that renders assistance to the elderly, because section 3034 applies to every such program. The scant evidence of congressional intent that can be adduced from enactment of section 3034(c) is simply insufficient to permit implication of a private right of action in the face of a silent legislative history.

hold that a private right of action is not implied by the minimum wage provisions of section 3056, on the ground that Congress did not intend that such a private remedy be available.

## II

■ Appellants also contend that, even if a private right of action is not available to them under section 3056, they nevertheless are able to sue AARP as third-party beneficiaries of the contract between AARP and DOL. We need not decide this question, however, because we conclude that AARP has properly interpreted and administered the wage provision of section 3056. Thus, even assuming that appellants have standing to maintain their action as third-party beneficiaries, AARP is entitled to judgment as a matter of law because the wage rate of AARP enrollees is consistent with the AARP-DOL contract and section 3056.

Resolution of this question turns on the meaning of "the prevailing rates of pay for persons who are employed in similar public occupations by the same employer." 42 U.S.C. § 3056(b)(1)(J). Appellants contend that the phrase has reference to similar *nonsubsidized* employment positions within the same *host* agency. In appellants' view, section 3056 mandates that enrollees be paid the same wage as employees who do similar work for the same host agency employer. On the other hand, appellees contend that the phrase means similar *subsidized* positions created by the same *sponsor* organization. According to appellees, appellants need be paid only the rate paid to other enrollees doing similar work in positions arranged for by AARP.

■ Although there is support in the record for both interpretations, we conclude that appellees' interpretation is the appro-

priate one. In determining the meaning of a statute and its attendant regulations, a reviewing court should give "great deference" to a reasonable interpretation used by the agency charged with administering and enforcing the statute. *Udall v. Tallman*, 380 U.S. 1, 17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *accord United States v. Consumer Life Insurance Co.*, 430 U.S. 725, 751–52, 97 S.Ct. 1440, 1454, 52 L.Ed.2d 4 (1977); *Baker v. United States*, 613 F.2d 224, 226–27 (9th Cir. 1980). Such deference is particularly appropriate when the administering agency contemporaneously interpreted the statute upon being charged with its implementation in the first instance. *Chemehuevi Tribe of Indians v. Federal Power Commission*, 420 U.S. 395, 409–10, 95 S.Ct. 1066, 1075, 43 L.Ed.2d 279 (1975). The agency's interpretation of the statute is entitled to still more deference when Congress subsequently reenacts the statute without significant change, for it is then presumed that the agency interpretation has been implementing the statutory objectives to Congress' satisfaction. *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 275, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134 (1974).

■ DOL, as the federal agency charged with administering the Act, has determined that section 3056(b)(1)(J) requires only that appellants be paid the highest of the federal minimum wage, any applicable state or local minimum wage, or the prevailing wage paid to other enrollees by the same sponsor.[5] This is a reasonable reading of the statutory language. Moreover, DOL's interpretation was the first, and thus far has been the only, interpretation given to this subsection. Finally, Congress was aware of DOL's interpretation of the Act, yet took no steps to change that interpretation when it reenacted the Act in

---

5. The language of the regulations, though ambiguous, lends some support to appellants' position. It provides that enrollees shall be paid the highest of the federal, state, or local minimum wage, or "[t]he prevailing rate of pay for persons employed in similar public occupations by the project sponsor, the subproject sponsor, *or the host agency*, as appropriate." 29 C.F.R. § 89.32(b)(3) (1976) (emphasis added); *accord*

29 C.F.R. § 89.283(b)(3) (1974). Nevertheless, DOL's interpretation of these regulations supports AARP's position. DOL has entered into several contracts with AARP pursuant to the authority of the Act, and the course of their performance has made clear that DOL has adopted the interpretation argued by AARP, and not that asserted by appellants.

1975 as part of the Amendments; on the contrary, it specifically singled out for praise the programs of particular sponsors, including AARP, and expressed its feeling that such programs should continue to receive funding at or above their previous levels. *See generally* 121 Cong.Rec. 9185–86 (1975) (remarks of Rep. Brodemas, House floor manager for the Amendments); *id.* at 37734–46 *passim* (remarks of Sen. Eagleton, Senate floor manager for the Amendments, and Sens. Beall, Fong, Church, Domenici, Kennedy, Tunney, and Williams).

We conclude that under section 3056(b)(1)(J), appellants need only be paid the highest of the federal minimum wage, any applicable state or local minimum wages, or the wage prevailing among enrollees doing similar work for the same sponsor. Because the wages paid by AARP are in accordance with this reading of section 3056(b)(1)(J), appellants' claim must fail.

In summary, we hold that no private right of action exists pursuant to section 3056 of the Act.[6] Additionally, assuming that appellants have standing to sue AARP as third-party beneficiaries of the AARP–DOL contract, we hold that AARP administers its program consistent with section 3056, and, therefore, is entitled to judgment as a matter of law.

The judgment is AFFIRMED.

GOODWIN, Circuit Judge, specially concurring.

I concur in the opinion of the court. Appellees are entitled to judgment as a matter of law. Congress did not create a private cause of action in favor of Mr. Osborn's class. None of the relevant factors demonstrates Congressional intent to create a private right of action in the Older American Community Services Employment Act of 1973. Neither the legislative history, the language of the Act, nor its purpose or structure supports such an implication.

I do not agree, however, with the dictum in footnote 1 and accompanying paragraph. The passage from *Cannon v. University of Chicago,* 441 U.S. 667, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), cited by the majority, as well as the recent Supreme Court opinions in *Universities Research Ass. v. Coutu,* 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981), *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981), and *California v. Sierra Club,* 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981), persuade me that the Supreme Court has not said (and did not mean) that express conference of a federal right is necessary in order to find that the language of a statute supports the inference of Congressional intent to create a private cause of action. *See, e. g., Universities Research Ass., supra,* 450 U.S. at 771–772, 101 S.Ct. at 1462 ("The Court consistently has found that Congress intended to create a cause of action 'where the language of the statute explicitly confer[s] a right directly on a class of persons that include[s] the plaintiff in the case.' Conversely, it has noted that there 'would be far less reason to infer a private remedy in favor of individual persons' where Congress rather than drafting the legislation 'with an unmistakable focus on the benefitted class,' instead has framed the statute simply as a general prohibition or command to a federal agency." (Citations omitted.)); *California v. Sierra Club, supra,* 451 U.S. 292, 101 S.Ct. at 1779 (In concluding that the "language does not indicate an intent to provide the private rights of action," the Court cited the passage from *Cannon v. University of Chicago, supra,* cited by the majority in n.1). *Cf. Tama v. Lewis,* 444 U.S. 11, 16–17, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979) (finding an implied cause of action in § 215 even though the statute only required certain duties of persons in order to benefit the public at large).

Because there is no reason for us to reach this conclusion in this case, I respectfully note my disagreement with it.

---

**6.** Thus, we do not reach the question whether exhaustion by all plaintiffs of their administrative remedies would be a jurisdictional prerequisite to filing suit under the Act.