**AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES LOCAL 506, Plaintiff,**

v.

**The PRIVATE INDUSTRY COUNCIL OF TRUMBULL COUNTY, et al., Defendants.**

**No. 4:89 CV 0687.**

United States District Court, N.D. Ohio, E.D.

July 12, 1990.

David L. Engler, Youngstown, Ohio, for plaintiff.

Thomas E. Carney, Warren, Ohio, Joseph T. Dull, Niles, Ohio, for defendants.

## MEMORANDUM OPINION

DOWD, District Judge.

### INTRODUCTION

This dispute arose out of the planned participation by the defendant, City of Niles ("City), in the 1989 Summer Youth Employment Training Program ("SYETP"). SYETP, which is authorized and funded by the Job Training Partnership Act of 1982 ("JTPA"), is administered by defendant, The Private Industry Council ("PIC").

Defendant City requested SYETP participants to work in various City service departments, including parks, cemetery, streets and water, for the summer of 1989. Plaintiff American Federation of State, County, and Municipal Employees Local 506 ("AFSCME") objected to the use of SYETP workers on the grounds that the City had reduced its work force with the intention of filling those vacancies with SYETP employees, thus violating 29 U.S.C. § 1553. On that basis, plaintiff filed a Complaint seeking a preliminary injunction to prevent defendants from placing SYETP participants in the City of Niles.

The Court conducted a hearing on plaintiff's motion for a preliminary injunction on May 4 and May 15, 1989 and subsequently requested that the parties supply certain additional information. Upon consideration of the evidence presented at the preliminary injunction hearing as well as the additional information supplied by the parties, the Court, without deciding whether the City's use of SYETP employees in the summer of 1989 violated 29 U.S.C. § 1553, denied plaintiff's motion for a preliminary injunction on the grounds that plaintiff had failed to exhaust the administrative remedies required by the JTPA. The case was then transferred to the Court's non-assigned docket.

By motion filed May 16, 1990, plaintiff moved the Court to transfer the above-captioned case from the non-assigned to the active docket. The basis for plaintiff's motion was that it had pursued the administrative remedies required by the JPTA and now seeks review of that decision pursuant to 29 U.S.C. § 1554. The hearing officer of the Ohio Bureau of Employment Services adopted the local level hearing officer's determination that because AFSCME failed to establish that there were any union employees on layoff or that SYETP workers were performing bargaining unit work, and because the determination of the number of City employees is an administrative decision not controlled by the collective bargaining agreement, there was no violation of 29 U.S.C. § 1553. Joint Exhibits 4 and 5.

Plaintiff's motion to reactivate the case was granted and a status conference was conducted on June 14, 1990. At that time, the Court granted plaintiff leave to amend its Complaint to seek declaratory relief and set the case for a hearing on the merits on June 25, 1990. The Court conducted a hearing on the merits as scheduled. At the hearing, the parties entered into an oral stipulation which was transcribed and provided to the Court for its use. References by the Court to the parties' stipulation will be made according to the page on the transcript at which they appear.

On June 29, 1990, all parties submitted post-trial briefs pursuant to leave of the Court (docket nos. 57, 58 and 59). Because defendant City's brief raised issues of law not previously raised, plaintiff sought leave to file a response, which was granted. Plaintiff has filed its response to defendant City's post-trial brief (docket # 60) and the matter is now at issue before the Court.

For the reasons discussed below, the City of Niles, the Mayor of the City of Niles and the Private Industry Council of Trumbull County are hereby enjoined from placing or implementing SYETP participants in the street department in any fashion.

### FACTS

Plaintiff AFSCME represents the service employees of the City of Niles. Ordinance

72–88 of the City of Niles authorizes 115 employees as the maximum work force within the City. Transcript of Oral Stipulation ("Tr."), p. 2. With respect to the service employees represented by AFSCME, the work force allocation relevant to this case is broken down in Ordinance 72–88 as follows:

| Authorized Strength Not To Exceed | Position |
|---|---|
| | **SAFETY–SERVICE COMPLEX** |
| 1 | Clerk to Safety Service Director |
| 1 | Maintenance Man (Groundskeeper) |
| 4 | Dispatchers |
| | **STREET DEPARTMENT** |
| 7 | Truck & Equipment Drivers |
| 1 | Mechanic |
| 1 | Asst. Mechanic (Payable ½ water, ¼ street, ¼ sewage) |
| 6 | Laborers |
| | **LIGHT DEPARTMENT** |
| 11 | Linemen |
| 1 | Electric Customer Service Man |
| 1 | Electric Equipment Technician |
| 1 | Asst. Equip. Technician |
| 1 | Delinquent Accounts Collector (Payable ⅓ light, ⅓ water, ⅓ sewer) |
| 3 | Apprentice Linemen |
| 3 | Groundsmen |
| 2 | Workers Class "B" |
| 1 | Storekeeper |
| 1 | Mechanic |
| 1 | Draftsman (Payable ½ light, ¼ water, ¼ sewage) |
| 1 | Assistant Mechanic |
| 1 | Dayturn [sic] Janitor |
| 3 | Meter Readers |
| 3 | Laborers |
| 1 | Assistant Senior Clerk |
| 5 | Clerks |
| 1 | Secretary to Superintendent |
| | **ELECTRIC LIGHT TREE–TRIMMING DIVISION** |
| 2 | Tree Trimmers |
| | **WATER DEPARTMENT** |
| 3 | Meter Readers |
| 1 | Water Customer Serviceman |
| 2 | Clerks |
| 3 | Class A Laborers |
| 3 | Class B Laborers |
| 1 | Mechanic (Payable ½ water, ¼ sewage, ¼ street) |
| 2 | Special Equipment Operators |
| 1 | Assistant Mechanic (Payable ½ water, ¼ sewage, ¼ street) |
| 4 | Laborers |
| | **SEWAGE DEPARTMENT** |
| 5 | Operators—Plant |
| 1 | Laboratory Technician |
| 1 | Special Equipment Operator |
| 1 | Maintenance Mechanic |
| 1 | Mechanic (Payable ¼ street, ¼ sewage, ½ water) |
| 1 | Asst. Mechanic (Payable ¼ street, ¼ sewage, ½ water) |

| Authorized Strength Not To Exceed | Position |
|---|---|
| 2 | Class A Laborers |
| 2 | Class B Laborers |
| 2 | Laborers |

**CEMETERY DEPARTMENT**

| | |
|---|---|
| 3 | Laborers |
| 1 | Special Equipment Operator |

**PARK AND RECREATION DEPT.**

| | |
|---|---|
| 1 | Working Crew Leader |
| 1 | Secretary (6 months) |
| 1 | Athletic Field Maintenance Man |
| 1 | Building & Facility Maintenance Man |
| 1 | Chief Maintenance Man |

Joint Exhibit 1.

---

There are currently ninety-six service employees in the City represented by AFSCME Local 506. Tr., p. 2. The existing vacancies in the maximum work force allocation are as follows:

1. Safety service complex: 1 dispatcher; 1 maintenance/groundskeeper; 1 fill-in dispatcher
2. Street department: 5 laborers
3. Light department: 1 tree trimmer; 2 linemen; 1 assistant equipment technician
4. Water department: 1 class A laborer; 2 class B laborers; 2 laborers
5. Cemetery department: 2 laborers
6. Park department: 0 vacancies

Transcript, pp. 2–3.

---

On February 23, 1990, the City requested of PIC 49 SYETP participants to be placed in the City of Niles for employment under JTPA for the summer of 1990. Tr., p. 3; Joint Exhibit 2. The intended utilization of SYETP participants is broken down as follows:

| | |
|---|---|
| Niles Park Dept. | 16 |
| Street Dept. | 12 |
| Niles Cemetery | 10 |
| Water Dept. | 4 |
| Wastewater Treatment | 2 |
| Light Dept. | 2 |
| Engineering Office | 1 |
| Auditor's Office | 1 |
| Mayor's Office | 1 |

Joint Exhibit 2.

PIC declined the City's request for placement of 49 SYETP workers on the grounds that a safe working environment was in question in light of the ongoing controversy between AFSCME and the City. Joint Exhibit 3.

The parties stipulate that, since the commencement of this action, there have been no bargaining unit employees on layoff status in the City. Tr., p. 4. Since Mayor Parise assumed office in January, 1988 as Mayor of the City of Niles, he has not taken any affirmative action to reduce the work force in the City's service departments. Further, there is no minimum staffing provision in the collective bargaining agreement between AFSCME and the City. Tr., p. 4; Joint Exhibit 6.

Plaintiff contends that while there are no service department employees currently on lay-off, the work force has been reduced through attrition, promotions, and retirements and the City has taken no action to fill these positions. It is this reduction in work force, coupled with an intent to utilize SYETP workers to perform bargaining unit work in the City's service departments, that plaintiff alleges constitutes a violation of 29 U.S.C. § 1553. Plaintiff has no objection to the use of SYETP employees by the City to perform supplemental, seasonal work in the service departments, however, it does object to the use of federally funded workers to perform what it alleges to be bargaining unit work. AFSCME argues that in passing the JTPA, Congress did not intend that federally subsidized employees be utilized by a city to perform regular city services.

## LAW AND DISCUSSION

**A. *Can AFSCME Maintain a Private Cause of Action under JTPA for Violation of 29 U.S.C. § 1553(b)?***

"The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction ... [W]hat must ultimately be determined is whether Congress intended to create the private remedy asserted...." *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15–16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979); *National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974)).

1. Express private right of action.

■ The inquiry into whether a statute creates a private right of action commences with an examination of the statutory language itself.[1]

**(b) Nondisplacement of local workers; existing collective bargaining agreements; nonavailability for layoff replacement; noninfringement of promotion opportunity**

(1) No currently employed worker shall be displaced by any participant (including partial displacement such as a reduction in the hours of nonovertime work, wages, or employment benefits).

(2) No program shall impair existing contracts for services or collective bargaining agreements, except that no program under this chapter which would be inconsistent with the terms of a collective bargaining agreement shall be undertaken without the written concurrence of the labor organization and employer concerned.

(3) No participant shall be employed or job opening filled (A) when any other individual is on layoff from the same or any substantially equivalent job, or (B) when the employer has terminated the employment of any regular employee or otherwise reduced its workforce with the intention of filling the vacancy so created by hiring a participant whose wages are subsidized under this chapter.

(4) No jobs shall be created in a promotional line that will infringe in any way upon the promotional opportunities of currently employed individuals.

29 U.S.C. § 1553(b).

29 U.S.C. § 1554 speaks to grievance procedures in connection with grievances or complaints concerning programs under the JTPA. It provides

**§ 1554. Grievance procedure**

**(a) Maintenance and timing**

Each administrative entity, contractor, and grantee under this chapter shall establish and maintain a grievance procedure for grievances or complaints about its programs and activities from participants, subgrantees, subcontractors, and other interested persons. Hearings on any grievance shall be conducted within 30 days of filing of a grievance and deci-

---

**1.** "[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. at 19, 100 S.Ct. at 247.

sions shall be made not later than 60 days after the filing of a grievance. Except for complaints alleging fraud or criminal activity, complaints shall be made within one year of the alleged occurrence.

### (b) Requirement for recipient grievance procedure

Each recipient of financial assistance under this chapter which is an employer of participants under this chapter shall continue to operate or establish and maintain a grievance procedure relating to the terms and conditions of employment.

### (c) Investigation by Secretary

Upon exhaustion of a recipient's grievance procedure without decision, or where the Secretary has reason to believe that the recipient is failing to comply with the requirements of this chapter or the terms of the job training plan, the Secretary shall investigate the allegation or belief and determine within 120 days after receiving the complaint whether such allegation or complaint is true.

29 U.S.C. § 1554.

Subsection (a) requires the establishment of a grievance procedure to deal with generalized grievances and complaints regarding JTPA programs and activities. Subsection (b) requires that recipients of financial assistance pursuant to JTPA maintain a grievance procedure to deal with complaints and grievances relating to terms and conditions of employment. Subsection (c) provides that upon exhaustion of the recipient's grievance procedure established to deal with complaints and grievances relating to terms and conditions of employment, or where the Secretary has reason to believe the recipient is not complying with the requirements of the JTPA, then the Secretary "shall investigate" and arrive at a determination within 120 days of the complaint.

29 U.S.C. § 1576 provides for administrative review in situations where an applicant has sought financial assistance under the JTPA which has been denied by the Secretary of Labor in whole or in part.

## § 1576. Administrative adjudication

### (a) Hearing after denial of assistance or sanction by Secretary

Whenever any applicant for financial assistance under this chapter is dissatisfied because the Secretary has made a determination not to award financial assistance in whole or in part to such applicant, the applicant may request a hearing before an administrative law judge of the Department of Labor. A similar hearing may also be requested by any recipient upon whom a corrective action or a sanction has been imposed by the Secretary. Except to the extent provided for in section 1577 of this title, all other disputes arising under this chapter shall be adjudicated under grievance procedures established by the recipient or under applicable law other than this chapter.

### (b) Time for filing exceptions; final action by Secretary

The decision of the administrative law judge shall constitute final action by the Secretary unless, within 20 days after receipt of the decision of the administrative law judge, a party dissatisfied with the decision or any part thereof has filed exceptions with the Secretary specifically identifying the procedure, fact, law, or policy to which exception is taken. Any exception not specifically urged shall be deemed to have been waived. Thereafter the decision of the administrative law judge shall become the final decision of the Secretary unless the Secretary, within 30 days of such filing, has notified the parties that the case has been accepted for review.

### (c) Time for Secretary's review

Any case accepted for review by the Secretary shall be decided within one hundred and eighty days of such acceptance. If not so decided, the decision of the administrative law judge shall become the final decision of the Secretary.

### (d) Judicial review

The provisions of section 1578 of this title shall apply to any final action of the

Secretary under this section.

29 U.S.C. § 1576.

29 U.S.C. § 1578 provides that any party aggrieved of a final order of the Secretary of Labor in connection with the relevant sections of the JTPA is confined in their appeal of that final order to the United States Court of Appeals.

§ 1578. Judicial review

(a) **Review by Court of Appeals of Secretary's final order; review petition, final order record, expeditious review; scope of review**

(1) With respect to any final order by the Secretary under section 1576 of this title whereby the Secretary determines to award, to not award, or to only conditionally award, financial assistance, with respect to any final order of the Secretary under section 1576 of this title with respect to a corrective action or sanction imposed under section 1574 of this title, and with respect to a denial of an appeal under section 1511(4)(C) of this title or 1515(b)(2) of this title, any party to a proceeding which resulted in such final order may obtain review of such final order in the United States Court of Appeals having jurisdiction over the applicant or recipient of funds, by filing a review petition within 30 days of such final order.

29 U.S.C. § 1578(a)(1).

Lastly, although the regulations propounded by the Secretary are only entitled to "light weight," *CETA Workers' Organization Committee v. City of New York,* 617 F.2d 926, 930 (2nd Cir.1980), 20 C.F.R. § 636.1 provides in relevant part

Nothing in this Act or this paragraph, shall:

. . . .

(2) Allow any person or organization to file a suit which alleges a violation of JTPA or these regulations without first exhausting the administrative remedies described in this subpart, or

(3) Be construed to create a private right of action with respect to alleged violations of JTPA or the regulations.

20 C.F.R. § 636.1(c)(2) and (3).

Based upon an examination of the statute, the Court concludes that no express private right of action has been afforded to plaintiff by Congress.

2. Implied private right of action.

■ Notwithstanding the lack of an express right of action, plaintiff may nevertheless bring its complaint before this Court if the JTPA contains an implied private right of action. In determining whether the JTPA confers an implied right of action upon AFSCME, the Court applies the analysis set out in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). *See Kaiser v. U.S. Postal Service, et al.,* 908 F.2d 47 (6th Cir.1990). According to *Cort,* the four factors to be considered in determining whether a private remedy is implicit in a statute which does not expressly provide for such a remedy are: 1) is the plaintiff a member of the class for whose "especial" benefit the statute was enacted; 2) is there any explicit or implicit indication of legislative intent to create or deny a private remedy; 3) is it consistent with the underlying purpose of the legislative scheme to imply such a remedy for the plaintiff; and 4) is the cause of action one which is traditionally relegated to the States in an area which is basically a concern of the States so that it would be inappropriate to infer a cause of action based solely upon federal law. *Cort v. Ash,* 422 U.S. at 78, 95 S.Ct. at 2087.

It is apparent from the language of the statute that the prohibitions of 29 U.S.C. § 1553(b) were intended to benefit regular local workers from displacement, lost promotional opportunities, etc., as the result of placement of JTPA participants.[2]

While § 1554(a) speaks to the maintenance of grievance procedures for the pur-

**2.** Whether Congress's intent to benefit these regular local workers translates into the creation of a private right of action is a question to which

the legislative history of the JTPA does not speak.

pose dealing with generalized complaints, subparts (b) and (c) deal with grievance procedures in connection with the recipient of JTPA funds. These subparts are inapplicable to AFSCME's complaint against the City because the City is not a recipient of JTPA funds within the meaning of the statute. The City's role with respect to SYETP participants is merely to supervise them for the summer and it is not involved in any fashion with the funding of these participants. The Court further observes that the procedures for administrative adjudication set out in § 1576 are inapposite to this case to the extent that AFSCME is not an applicant aggrieved because of a decision by the Secretary of Labor regarding funding. Lastly, the Court observes that there is no explicit indication in the statute of an intention on the part of Congress to deny a private remedy.[3]

■ The Court finds that the JTPA's purpose is to provide federal funds to prepare and train youth and unskilled adults for entry into the labor force. Congress did not intend the federal taxpayer to finance the performance of regular city services, properly the financial responsibility of the citizens of a city, through the use of federally funded JTPA participants to perform regular city services. It was not the purpose of Congress to use JTPA participants to serve as a substitute for city employees rendering necessary services to the citizens of that city. This construction of Congress's intention with respect to the proper use of JTPA funds is confirmed by § 1553(b)'s prohibition of the displacement of regular employees by JTPA participants.

Lastly, AFSCME's cause of action exists purely as a result of Congress's enactment of the JTPA and has no independent roots in a state cause of action. Accordingly, this dispute is one appropriately resolved by a federal, not state, court.

The Court finds that in balancing the four factors of *Cort v. Ash*, the JTPA provides an implied private right of action by which AFSCME may bring suit against the City in federal court for alleged violations of 29 U.S.C. § 1553(b)(3).

**B.** *Has the City violated 29 U.S.C. § 1553(b)(3)?*

■ Having determined that AFSCME may maintain a private cause of action against the City, the Court goes on to consider the merits of plaintiff's allegations.

29 U.S.C. § 1553 provides in relevant part:

(b) Nondisplacement of local workers; existing collective bargaining agreements; nonavailability for layoff replacement; noninfringement of promotion opportunity

.        .        .        .        .

(3) No participant shall be employed or job opening filled ... (B) when the employer has terminated the employment of any regular employee *or otherwise reduced its workforce with the intention of filling the vacancy so created by hiring a participant whose wages are subsidized under this chapter.*

29 U.S.C. § 1553(b)(3)(B) (emphasis added).

The Court observes that there is virtually no case law which speaks to the interpretation of 29 U.S.C. § 1553(b)(3). Therefore, this Court writes on a clean slate in determining whether the reduction of a workforce through attrition in a situation where there exists an authorized, but not required, maximum work force and no required minimum number of workers comes within the language of § 1553(b)(3) which prohibits the use of SYETP employees where the employer[4] has "otherwise re-

---

**3.** The Code of Federal Regulation ("C.F.R."), which purports to construe the JTPA, is ambiguous in that subpart (c)(2) of 20 C.F.R. § 636.1 speaks to the filing of a suit only after the exhaustion of administrative remedies while subpart (c)(3) indicates that no private right of action exists with respect to alleged violations of the JTPA.

**4.** The definitions section of the JTPA does not define the term "employer." The Court recognizes that the City is not an employer of SYETP participants in the sense that is pays the youths and is reimbursed by the government pursuant to the JTPA. However, the City does provide the positions for SYETP participants as well their supervision. The work performed by the SYETP employees is work performed for the benefit of the City. Therefore, in the absence of

duced its workforce with the intention of filling the vacancy so created by hiring a participant whose wages are subsidized under this chapter." [5]

The Court finds that the "or otherwise reduced its workforce" language of § 1553(b)(3) is clearly broad enough to encompass the reduction of a workforce through attrition, and would constitute a violation of that section if that workforce reduction took place with the intent to use SYETP participants to do work that would typically be performed by a workforce that was not "otherwise reduced." The Court recognizes that the "or otherwise reduced its workforce" language implies active conduct on the part of the employer to reduce its workforce rather than the passive conduct of reduction through attrition. However, the Court finds that prolonged passive conduct which demonstrates a pattern and practice of behavior designed to produce the same ultimate result as active displacement of regular employees with SYETP employees constitutes the active maintenance of a situation by the employer for the purpose of reducing its workforce within the meaning of § 1553(b)(3).

The Court further finds that the "or otherwise reduced its workforce" language is to be applied on a department to department basis and not to the entire workforce of an employer. To do otherwise would unfairly deprive departments who were not in violation of the statute's prohibitions from the benefit of JTPA participants simply because the actions of the employer with respect to another department constituted a violation of the statute.

Notwithstanding the Court's findings, the difficult task remains of determining what behavior on the part of an employer constitutes a prohibited reduction in work-

force in a situation where the authorized maximum number of workers in not required and the collective bargaining agreement does not establish a minimum. The Court is sensitive to the City's right to determine the number of its employees within the parameters of the collective bargaining agreement. However when the City chooses to avail itself of the benefits of federally funded workers, it must agree to relinquish a portion of its traditional rights and be limited by the statutory requirements of § 1553(b)(3).

In the instant case, neither party provided the Court with any quantitative evidence as to the need for the services of any given department compared with the ability of the existing workforce in that department to satisfy that need. While the maximum number of workers authorized by the City's ordinance does not represent a required number, the Court observes that there must be some correlation between the maximum number and anticipated need. Obviously, the smaller the need to vacancy ratio, the more likely a finding that the workforce was being allowed to decrease with the intent of satisfying the need with JTPA subsidized workers.

Notwithstanding the dearth of evidence in this case, it is obvious to the Court that the regular work in the street department of the City of Niles, where there is presently only one laborer,[6] cannot possibly be met by that limited manpower. The Court's determination is reinforced by the City's request to PIC for twelve SYETP employees to be assigned to the street department. Accordingly, the Court finds that the City of Niles intentionally reduced its workforce in the street department through attrition with the intent of utilizing SYETP employees to perform regular

a statutory definition to the contrary, the Court finds that the City is an employer for the purposes of AFSCME's allegations that the City has violated 29 U.S.C. § 1553(b)(3).

5. The Court notes that while the portion of Title 29, Chapter 19 (Job Training Partnership) which provides for the Summer Youth and Employment and Training Programs is within Subchapter II, and § 1553 falls within Subchapter I, the prohibitions of § 1553 are nevertheless applica-

ble to SYETP participants because the statutory prohibition clearly includes all participants whose wages are subsidized the Job Training Partnership Act.

6. In 1989 when the parties were before the Court in connection with AFSCME's motion for a preliminary injunction, there were no laborers in the street department, resulting in six vacancies in that department.

City services in the street department rather than seasonal, supplemental work.

## CONCLUSION

For the reasons discussed above, the Court finds that the "or otherwise reduced its workforce" language encompasses the reduction of a workforce through attrition, and constitutes a violation of 29 U.S.C. § 1553(b)(3) in the case where that workforce reduction takes place with the intent to use SYETP participants to do work that would typically be performed by a workforce that was not "otherwise reduced." Further, the "or otherwise reduced its workforce" language is to be applied on a department to department basis and not to the entire workforce of an employer.

In this case, the Court finds that the defendants intentionally reduced the workforce in the street department through attrition with the intention of using SYETP workers to accomplish that work, thus violating 29 U.S.C. § 1553(b)(3). Accordingly, the City of Niles, the Mayor of the City of Niles and PIC are prohibited from placing or implementing SYETP workers in the City of Niles in the street department in any capacity. This prohibition does not apply to the other service departments in the City of Niles.

IT IS SO ORDERED.