942 F.2d 376
 AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES
LOCAL 506, Plaintiff-Appellee,
v.
The PRIVATE INDUSTRY COUNCIL OF TRUMBULL COUNTY, and City of
Niles, Ohio, Defendants,
Joseph J. Parise, Mayor, Defendant-Appellant.
 No. 90-3710.
 United States Court of Appeals,
Sixth Circuit.
 Argued July 30, 1991.
Decided Aug. 20, 1991.
 
 David L. Engler (argued), Youngstown, Ohio, for plaintiff-appellee.
 Joseph T. Dull (argued), Niles, Ohio, for defendant-appellant.
 Before MARTIN and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 MILBURN, Circuit Judge.
 
 
 1
 Defendant Joseph J. Parise, Mayor of the City of Niles, Ohio, appeals the judgment of the district court holding that the Mayor and the City violated 29 U.S.C. § 1553(b)(3) of the Job Training Partnership Act, and enjoining defendants from placing Summer Youth Employment Training Program participants in the City's street department.
 
 
 2
 The principal issues on appeal are (1) whether the Job Training Partnership Act provides an implied private right of action, (2) whether reduction of a work force through attrition violates 29 U.S.C. § 1553(b)(3)(B), and (3) whether this action was barred by the doctrine of issue preclusion following the administrative proceedings. For the reasons that follow, the judgment of the district court is reversed, and the injunction against the defendants is vacated and dissolved.
 
 I.
 
 3
 This case arose out of the planned participation by the City of Niles, Ohio, in the Summer Youth Employment Training Program ("SYETP"), administered by the Private Industry Council ("PIC") of Trumbull County, Ohio. SYETP is authorized and funded by the Job Training Partnership Act of 1982 ("JTPA"), 29 U.S.C. § 1501 et seq., which replaced the Comprehensive Employment and Training Act ("CETA"), 29 U.S.C. § 801 et seq. The City of Niles requested SYETP participants to work in various city service departments for the summer of 1989. The American Federation of State, County, and Municipal Employees Local 506 ("AFSCME") represents employees who work in the city service departments. The collective bargaining agreement between AFSCME and the City contained no provision regarding the minimum number of workers to be employed by the City.
 
 
 4
 On April 18, 1989, AFSCME filed a complaint seeking a preliminary and permanent injunction to prevent PIC, the City of Niles, and the Mayor from placing SYETP participants in various city service departments including parks and recreation, street, and water. On May 4 and May 15, 1989, the district court conducted a hearing on AFSCME's motion for a preliminary injunction. Without addressing the merits of the case, the district court denied AFSCME's motion on the grounds that it had failed to exhaust the administrative remedies required by the JTPA, and the court transferred the case to its non-assigned docket. AFSCME pursued its administrative remedies by filing a complaint pursuant to the procedure established by the JTPA. On August 16, 1989, a local level hearing officer issued a decision denying AFSCME's complaint, and the decision was adopted and affirmed by a state level hearing officer on September 22, 1989.
 
 
 5
 On May 16, 1990, AFSCME filed a motion in the district court to transfer the case from the non-assigned to the active docket asserting that it had exhausted the grievance procedure provided by the JTPA, and it now sought review of the administrative decision pursuant to 29 U.S.C. § 1554. The district court granted the motion to reactivate the case and subsequently granted AFSCME leave to amend its complaint to seek declaratory relief. On June 25, 1990, the district court conducted a hearing on the merits, and on July 12, 1990, the court entered a judgment and memorandum opinion holding that the JTPA provided AFSCME an implied private right of action against the City for alleged violations of 29 U.S.C. § 1553(b)(3). The district court held that the City of Niles and Mayor Parise violated 29 U.S.C. § 1553(b)(3) by reducing the work force in the street department through attrition with the intention of using SYETP participants to perform the street department work. 748 F.Supp. 1232. The district court enjoined defendants from placing SYETP participants in the street department. Mayor Parise timely filed notice of appeal.[1]
 
 II.
 
 6
 As a preliminary matter, we must establish that AFSCME has standing to bring this action. Although neither party has raised the issue of standing, "this court can and must address the issue on its own motion." Jaimes v. Toledo Metro. Hous. Auth., 758 F.2d 1086, 1092 (6th Cir.1985). It is well-settled that "[e]ven in the absence of injury to itself, an association may have standing solely as a representative of its members." International Union, UAW v. Brock, 477 U.S. 274, 281, 106 S.Ct. 2523, 2528, 91 L.Ed.2d 228 (1986). In Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977), the Supreme Court stated a three-part test for determining whether an association has standing to bring an action on behalf of its members:
 
 
 7
 (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.
 
 
 8
 We hold that the AFSCME satisfies this three-part test and has standing to bring this action on behalf of the city service department employees it represents.
 
 
 9
 "The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction.... [W]hat must ultimately be determined is whether Congress intended to create the private remedy asserted...." Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 15-16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979). The issue is subject to de novo review by this court. See Cannon v. University of Chicago, 441 U.S. 677, 688-89, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979).
 
 
 10
 In deciding whether a federal statute confers an implied private right of action, we consider four factors:
 
 
 11
 1) [whether] the plaintiff is of the class for whose especial benefit the statute was created; 2) whether there is any legislative intent, explicit or implicit, which either creates or denies a private remedy; 3) whether finding an implied cause of action is consistent with the underlying purposes of the legislative scheme; and 4) whether the cause of action is one that is traditionally left to state law such that it would be inappropriate to infer a cause of action based on only federal law.
 
 
 12
 Kaiser v. United States Postal Service, 908 F.2d 47, 50 (6th Cir.1990) (citing Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975), cert. denied, --- U.S. ----, 111 S.Ct. 673, 112 L.Ed.2d 665 (1991)). The central focus of the inquiry is congressional intent. Thompson v. Thompson, 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988); Lamb v. Phillip Morris, Inc., 915 F.2d 1024, 1028 (6th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 961, 112 L.Ed.2d 1048 (1991).
 
 The stated purpose of the JTPA is:
 
 13
 To establish programs to prepare youth and unskilled adults for entry into the labor force and to afford job training to those economically disadvantaged individuals and other individuals facing serious barriers to employment, who are in special need of such training to obtain productive employment.
 
 
 14
 29 U.S.C. § 1501. The JTPA was enacted primarily to benefit youth, unskilled adults, and other individuals facing serious barriers to employment. Other potential beneficiaries of the JTPA include employees who have "been treated unfairly in light of the standards imposed under § 1553 or who [have] been discriminated against in violation of § 1577." West Virginia v. Anchor Hocking Corp., 681 F.Supp. 1175, 1176 (N.D.W.Va.1987).
 
 
 15
 Section 1553(a) requires that JTPA participants be provided benefits and working conditions granted to other employees doing the same type of work. Section 1553(b) protects regular employees from being displaced by JTPA participants. Two district courts have held that section 1553 provides a cause of action for employees who are treated unequally or unfairly in light of the standards imposed under the statute. See Anchor Hocking, 681 F.Supp. at 1176; Clinch v. Montana AFL-CIO, 633 F.Supp. 872, 876 (D.Mont.1986). However, to imply a private right of action "the language of the statute in question must do more than confer benefits, for '[t]he question is not simply who would benefit ..., but whether Congress intended to confer federal rights upon these beneficiaries.' " Osborn v. American Ass'n of Retired Persons, 660 F.2d 740, 743 (9th Cir.1981) (quoting California v. Sierra Club, 451 U.S. 287, 294, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981)).
 
 
 16
 The second Cort factor requires examination of the legislative history for evidence that Congress intended that a private right of action be available under the statute. AFSCME has identified no legislative history regarding a private cause of action under the JTPA. The district court found that the legislative history of the JTPA does not address whether the statute creates a private right of action, and our independent review of the legislative history confirms the district court's finding. Since the legislative history is silent regarding a private right of action, this court could "infer that Congress intended no such result." Lamb, 915 F.2d at 1029. "Although congressional silence is not necessarily fatal to implication of a private right of action, 'implying a private right of action on the basis of congressional silence is a hazardous enterprise at best.' " Osborn, 660 F.2d at 745 (quoting Touche Ross & Co. v. Redington, 442 U.S. 560, 571, 99 S.Ct. 2479, 2486, 61 L.Ed.2d 82 (1979)).
 
 
 17
 In deciding whether Congress intended to create a private right of action under the JTPA, it is helpful to consider how courts addressed this issue with regard to CETA. In CETA Workers' Organizing Committee v. City of New York, 617 F.2d 926, 931-34 (2d Cir.1980), the court applied the four Cort factors and held that there was no implied private right of action under CETA. The court concluded that "CETA's provision of a comprehensive administrative procedure subject to judicial review appear[ed] to indicate congressional intent against a private right of action." Id. at 933 n. 5. In Brock v. Pierce Co., 476 U.S. 253, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986), the Supreme Court observed that "the federal courts have uniformly held that the statutory complaint mechanism is the sole means of redress for a private party injured by a grant recipient's violation of CETA."
 
 
 18
 A comparison of CETA and the JTPA suggests that the rationale for finding no implied private right of action under CETA is applicable to the JTPA. CETA provided a number of administrative remedies when violations of its provisions occurred. See 29 U.S.C. § 816 (1978). "At the local level, CETA require[d] that each prime sponsor establish grievance procedures through which 'participants, subgrantees, contractors, and other interested persons' in the program may have complaints expeditiously resolved." Eastern Band of Cherokee Indians v. Donovan, 739 F.2d 153, 156 (4th Cir.1984). If a complainant failed to resolve the grievance at the local level, he could file a complaint at the federal level with the Secretary of Labor. The final decision of the Secretary was subject to judicial review in the United States Court of Appeals. 29 U.S.C. § 817(a) (1978).
 
 
 19
 Like CETA, the JTPA has a comprehensive administrative procedure for addressing complaints and grievances. The JTPA requires "[e]ach administrative entity, contractor, and grantee" to establish and maintain a grievance procedure for complaints and grievances by "participants, subgrantees, subcontractors, and other interested persons." 29 U.S.C. § 1554(a). Section 1554(b) requires "[e]ach recipient of financial assistance under this chapter which is an employer of participants ... to operate or establish and maintain a grievance procedure relating to the terms and conditions of employment." The district court held that the City is not a recipient of JTPA funds within the meaning of the statute. However, the terms recipient, subrecipient, and grantee are not defined in the JTPA. On the basis of the language in section 1554(b), we conclude that the City is a recipient. The City receives financial assistance under the JTPA in the form of federally subsidized participants who work in the City service departments. Had Congress intended to limit the term "financial assistance" to cash payments from the government, it could have so defined the term in the statute, as it did the term "public assistance." See 29 U.S.C. § 1503(20). Moreover, the City is an "employer of participants" in that it controls, directs and supervises the participants who work in the City service departments.
 
 
 20
 Upon exhaustion of a recipient's grievance procedure, the Secretary of Labor is authorized to investigate allegations that a recipient is not complying with the requirements of the JTPA. See 29 U.S.C. § 1554(c). The JTPA also provides for judicial review in the United States Court of Appeals of "any final order by the Secretary under section 1576 ... with respect to a corrective action or sanction imposed under section 1574...." 29 U.S.C. § 1578(a)(1). These provisions suggest that there is no implied private right of action under the JTPA because Congress "has established an elaborate system of administrative review, which would appear intended to be exclusive." Uniformed Firefighters Ass'n, 676 F.2d 20, 22 (2d Cir.), cert. denied, 459 U.S. 838, 103 S.Ct. 84, 74 L.Ed.2d 79 (1982).
 
 
 21
 While provision of a comprehensive administrative procedure may indicate congressional intent against implying a private right of action, another factor to consider is "whether the administrative remedies provide relief for the specific claims of the plaintiff." CETA Workers', 617 F.2d at 933 n. 5. In this case, it does appear that the administrative procedures of the JTPA would provide relief for the claims of AFSCME. Section 1574(g) authorizes the Secretary of Labor to take action or order corrective measures upon determining that any recipient "has discharged or in any other manner discriminated against a participant or against any individual in connection with the administration of the program involved, ... or otherwise unlawfully denied to any individual a benefit to which that individual is entitled under the [JTPA]...." The conduct which AFSCME complains of, the denial of protection afforded local workers by section 1553(b), seems to be conduct which the Secretary is authorized to address under section 1574(g). The final order of the Secretary would then be subject to judicial review in the court of appeals.[2] Accordingly, the administrative procedure of the JTPA "would appear intended to be exclusive." CETA Workers', 617 F.2d at 934.[3]
 
 
 22
 The third inquiry under Cort is whether implying a private right of action would be consistent with the underlying purposes of the legislative scheme. If one of the purposes of section 1553(b) is to protect local workers from being displaced by JTPA participants, then implying a private right of action could be consistent with the legislative scheme. Recognizing a private right of action would provide an enforcement mechanism to secure the protections afforded local workers by section 1553(b). However, as noted earlier, the grievance procedures mandated by the JTPA provide the means for local workers to secure the protections afforded by section 1553(b). "Although it is certainly possible that Congress would grant a private right of action concurrent with a system of agency oversight, it is difficult to understand, absent language to the contrary, what benefits would be gained from such dual review, particularly when judicial review of the Secretary's action is explicitly vested in the appellate courts." CETA Workers', 617 F.2d at 934 n. 7.
 
 
 23
 The final Cort factor to be considered is whether the cause of action is one traditionally left to state law such that it would be inappropriate to infer a cause of action based only on federal law. This factor is easily satisfied because the protection AFSCME seeks is based on a federal statute and has no independent basis in state law. Thus, implying a private right of action under the JTPA "would not intrude upon matters of state concern." Lamb, 915 F.2d at 1030. Accordingly, having evaluated the four Cort factors with the view toward discerning congressional intent, we hold that there is no implied private right of action under section 1553(b)(3)(B) of the JTPA.[4]
 
 III.
 
 24
 For the reasons stated, the judgment of the district court is REVERSED, and this case is REMANDED to the district court with instructions to dissolve its injunction and dismiss this case.
 
 
 
 [1]
 The City of Niles and PIC have not appealed the judgment of the district court
 
 
 [2]
 In its motion to transfer the case from the inactive docket to the active docket, AFSCME asserted that it sought judicial review of a final administrative decision. However, the district court would have no jurisdiction to review a final administrative decision under the JTPA because Congress has determined that judicial review is available only in the appellate courts. See 29 U.S.C. § 1578(a)(1)
 
 
 [3]
 If this court concludes that "neither the language, structure, nor the legislative history of the statute shows a congressional intent to fashion an implied private remedy, [it] need not consider the remaining two factors outlined in Cort." Kaiser, 908 F.2d at 52. Nevertheless, we shall discuss the remaining factors
 
 
 [4]
 Having determined that there is neither an express nor an implied right of action under section 1553(b)(3)(B) of the JTPA, we need not reach the other issues raised in this appeal